674 P.2d 333

**STATE of Arizona, Appellee,**

v.

**Peter M. RADJENOVICH, Appellant.**

**No. 1 CA–CR 6438.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 1, 1983.

Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Judge.

Peter Michael Radjenovich was convicted of sexual assault, a class 2 felony, in violation of A.R.S. § 13–1406 and was placed on probation for a period of three years with the condition that he serve one year in the Maricopa County jail. In this appeal three arguments are presented: first, that the trial judge erred in admitting evidence of the victim's prior rape; second, that defendant was denied effective assistance of counsel at trial; third, that the prosecutor was guilty of misconduct by contacting the defendant's expert witness prior to trial when this contact led to the witness deciding not to testify.

The evidence presented at trial reflects that the victim of the current sexual assault had been raped two years earlier in an unrelated incident. As a result of the first rape, the victim suffered from depression and withdrawal. This caused her to seek psychological counseling in February, 1982, from Cynthia Reed, a counselor at a mental health clinic. In April, 1982, after several weekly sessions, the victim's condition progressed to the point that she was encouraged by her counselor to venture out socially and meet new friends.

On the evening of April 5, 1982, the victim drove from her home in Buckeye, Arizona, to Phoenix to attend a concert at a local nightclub. She went to the concert and later danced with the defendant. She agreed to drive the defendant home. They left the nightclub in the victim's car at approximately 2:00 a.m. on the morning of April 6, 1982.

When they reached the defendant's townhouse complex he took the victim's keys from the ignition and forced the victim into sexual intercourse. The defendant then left the vehicle and the victim drove away,

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div.,

almost immediately encountering two police officers in a parked car. She ran toward the officers hysterically screaming that she had been raped. A medical examination revealed evidence of recent intercourse as well as scratch and bite marks.

A few days later, the investigating officers contacted defendant at his townhouse, told him of the victim's complaint and then advised him of his *Miranda* rights.[1] During questioning at this interview, defendant denied having had intercourse with the victim. At trial he admitted that they had intercourse, but testified that she consented.

The prosecutor intended to call three expert witnesses. The first witness to be called was Thomas P. O'Brien, M.D., a psychiatrist, who was to testify on the subject of rape, behavior of rapists, and the fact that the defendant's acts were consistent with acts of a rapist. The second expert was Cynthia Reed, the counselor who treated the victim after the previous rape. She was to be called for the purpose of showing that the victim had emotionally recovered from the first rape prior to the evening of April 5, 1982. The final expert, Sandra Johnson, was a counselor who specialized in counseling of sexual assault victims. She was to be called for the purpose of showing that the victim's post-rape emotional reactions were consistent with other rape victims, thereby rebutting the defense of consent. This was referred to in the trial memorandum as "rape trauma syndrome".

In support of the defense of consent, defendant's counsel also intended to call an expert witness, Rosalyn Meadow, Doctor of Psychology, who specialized in sex counseling. She was expected to testify that scratch marks, oral sex, and bites were not uncommon during normal sexual encounters. She would also testify that some of the victim's actions were inconsistent with rape. This anticipated testimony was based upon the counselor's review of the police reports and her interview with defendant.

The state's witnesses were called at trial and testified as indicated above. Additionally, Dr. O'Brien testified that because de-

fendant's actions during that evening were consistent with that of a "power rapist", it was his opinion that a rape had occurred. Sandra Johnson also testified that the victim's emotional symptoms were consistent with that of a rape victim.

The defendant's expert did not testify. The day before trial, the prosecutor had discussed with her the facts that he expected to prove at trial. In light of this discussion, she decided that she would not testify.

We now turn to defendant's arguments that the trial court erred in admitting evidence of the prior rape, that defendant was denied effective assistance of counsel, and that the prosecutor was guilty of misconduct.

## EVIDENCE OF PRIOR RAPE

During the prosecutor's opening statement he made reference to the fact that the victim had been previously raped in 1980. The defendant's trial counsel objected, but no record was made as to the grounds for his objection at that time. Later, outside the presence of the jury, the trial judge indicated that he would grant a mistrial based upon this reference to the prior rape if defendant's counsel so desired. Defendant's trial counsel clarified that his objection was limited to precluding the prosecutor from eliciting any detail of the prior rape. Additionally, because defense witnesses were soon planning to leave the state, he did not want a mistrial. Nevertheless, defendant's counsel on appeal argues that it was error for the trial court to admit any evidence of the prior rape or the victim's resulting emotional problems for two reasons. First, the evidence was not relevant under Rule 401, Arizona Rules of Evidence. Second, even if the evidence contained probative value, its probative value was substantially outweighed by the unfair prejudice created by sympathy for the victim and therefore should have been excluded under Rule 403, Arizona Rules of Evidence.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.  1602, 16 L.Ed.2d 694 (1966).

■ Because the evidence was not objected to at trial on the same grounds now raised on appeal, the issue has been waived absent fundamental error. *See State v. Vickers,* 129 Ariz. 500, 633 P.2d 315 (1981). Here, there was no fundamental error. The sole issue at trial was whether the victim consented to the act of sexual intercourse. The victim's marked personality change after her encounter with defendant was relevant to the issue of consent in that it corroborated the credibility of the victim. *State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1981). The evidence of the prior rape and the fact that the victim had substantially recovered from her emotional trauma thereafter was also relevant. It rebutted the defense that the victim fantasized that a second rape occurred and that her current emotional state was merely an emotional flashback to the prior rape. By limiting the evidence to the fact that a rape had occurred and that it did not involve this defendant, the prejudicial impact of the evidence was minimized. Thus, under these facts we find no fundamental error in the trial court admitting this evidence.

## INEFFECTIVE COUNSEL

Defendant lists several instances in which he was not afforded effective assistance of counsel in the trial court. These include: (1) trial counsel should not have waived the trial court's offer to conduct a voluntariness hearing; (2) trial counsel should have timely objected to the state's introduction of evidence that the victim had been previously raped and should not have restricted his objection to limiting the prosecutor from eliciting evidence of the details of the previous rape; (3) trial counsel failed to interview any of the prosecution's witnesses prior to trial; (4) trial counsel should have objected to Dr. O'Brien's testimony at trial or preferably filed a motion *in limine* to preclude his testimony; and (5) trial counsel should have objected to the testimony of Sandra Johnson insofar as it was offered to show that the victim suffered from "rape trauma syndrome".

■ The standard of effective assistance of counsel is whether, under the circumstances, the attorney showed at least minimal competence in representing his client. *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982). It was stated in *Watson* that defense attorneys are expected to file pre-trial motions concerning the voluntariness of statements, the reasonableness of searches, or the suggestiveness of identification when the facts raise issues concerning such matters.

Prior to trial, the parties discussed whether a voluntariness hearing was required regarding defendant's pre-trial statement that he had not had intercourse with the victim. The following colloquy occurred:

MR. MICHAEL WOOLFENDEN [defense attorney]: I see no reason for a voluntariness hearing. I believe that the witnesses—not the witnesses but the Jury can see the duress that existed. We will go from there.

THE COURT: Are you telling the Court, there is no issue as to his being given his *Miranda* rights?

MR. WOOLFENDEN: No issue to his being given his *Miranda* rights.

THE COURT: He made the statement thereafter—the Jury finds it voluntary—that is always submitted to them.

MR. WOOLFENDEN: Correct.

THE COURT: That will be submitted to them by an instruction. If you don't think there's an issue about the *Miranda* rights, there is no purpose for a voluntariness hearing.

MR. WOOLFENDEN: That's correct.

On appeal, it is argued that trial counsel misunderstood the scope of a pretrial voluntariness hearing and, by failing to request a hearing, counsel's actions fell below the standard announced in *Watson.*

■ It is true that defendant's trial counsel misunderstood the scope of a voluntariness hearing. It is the trial court's responsibility in evaluating the voluntariness of statements not only to determine whether *Miranda* warnings were given but whether,

under the totality of the circumstances, the statements were voluntary. *State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983). Without deciding whether this misunderstanding of law fell below the standard of minimal competence, *see State v. Smith,* 136 Ariz. 273, 665 P.2d 995 (1983), it is clear from the evidence presented at trial that the error was harmless.

■ There is no indication that when defendant was first interviewed by the officers there was any coercion. The only argument of duress was that there was a second contact by the investigating officers approximately two days after defendant made his statement that he had not had intercourse with the victim. Between the first interview and the second contact, defendant had spoken with an attorney and refused to permit the investigating officers to take his photograph. He testified at trial that one of the officers stated, "I will see you in jail." Because this statement was alleged to have been made after the initial interview, it did not create any material issue of fact relating to the voluntariness of the statement in issue. Therefore, failure to request the voluntariness hearing was harmless error.

■ Next, defendant claims that his trial counsel was ineffective because he failed to timely object to the introduction of evidence of the previous rape and should not have limited his objection just to excluding details of the previous rape. He argues that the evidence was irrelevant, prejudiced him by creating sympathy for the victim, and a timely objection to the evidence would have been sustained by the trial court as indicated by the trial court's later offer of a mistrial. However, the state contends this is no more than a disagreement by appellate counsel with trial counsel's trial tactics. As outlined above, part of trial counsel's defense tactic was to infer that even if the victim believed that the act of intercourse with defendant was forced, this was caused by her reliving the former rape rather than any acts of force by defendant. By allowing the testimony into evidence, defense counsel was also able to

explain the victim's current emotional withdrawal as a flashback to her previous rape. This is a close issue particularly in light of the manner in which defense counsel prepared this case. However, even assuming that the evidence may have been precluded upon a timely objection, its admission could be considered a tactical decision supported by the record and therefore will not support a claim of ineffective assistance of counsel. *See State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1982).

■ Defendant's final argument of ineffective counsel focuses on the fact that his trial counsel did not interview any of the prosecution's witnesses prior to trial. During the pretrial hearing regarding the prosecutor's interference with defendant's expert witness, the following discussion occurred:

MR. CLEVE LYNCH [prosecutor]: One thing I might add, Mike [defense counsel] hasn't requested interviewing any of the State's witnesses up to this point.

MR. WOOLFENDEN: I have not. I quite frankly don't see—Well, I'm glad at this point I haven't done it. I've taken the Police reports, what he told me at face value, and I'm glad. I can't be accused of interfering with any witnesses.

In *Watson,* the court stated:

However, we believe that a better standard would focus directly upon *basic notions of competence* rather than upon the reasonableness of counsel's actions. We have always held that disagreements as to trial strategy or errors in trial tactics will not support an ineffectiveness claim, *as long as* the challenged conduct could have had some reasoned basis.

134 Ariz. at 4, 653 P.2d at 354 (emphasis added). We have no hesitancy in holding that, except in the most unusual circumstances, it offends basic notions of minimal competence of representation for defense counsel to fail to interview any state witnesses prior to a major felony trial. Here, there is no reasonable basis in this record to support trial counsel's inference that he was somehow better off not interviewing the

State's witnesses. This was more than just a credibility contest solely between the victim and the defendant. The State was prepared to corroborate the victim's testimony through expert testimony that the victim suffered from "rape trauma syndrome" and that this emotional state was caused by the second rape. The State was also prepared to introduce expert testimony that defendant's actions fit the profile of a "power rapist." While apparently the testimony of the victim and the police officers was summarized in the police reports, it is clear from the trial transcript that these summaries did not include many details which were brought out at trial. By failure of his counsel to interview these witnesses, defendant was placed at a disadvantage at trial.

Additionally, we cannot say that failure of trial counsel to interview the state's witnesses was harmless. To corroborate the defense of consent, trial counsel intended to offer the testimony of an expert witness who would testify that the defendant's actions on that evening, including creating a bite on the victim's thigh, scratching her on the back, and offering oral sex were consistent with normal sexual behavior. In soliciting this expert's testimony, defendant's trial counsel gave her the police reports in addition to having her interview the defendant. After the prosecutor interviewed this expert prior to trial and explained to her the testimony that he intended to elicit at trial, the witness decided not to testify on behalf of the defendant. As a result, defendant's trial counsel was placed in the Hobson's choice of having to either proceed to trial without his expert or accept the trial court's offer for a continuance at the risk of losing other defense witnesses. The fact that this situation was created by trial counsel's failure to interview the prosecutor's witnesses is clear from the pretrial hearing on the request for sanctions. After the prosecutor outlined for the court the portions of the state's case which he had discussed with the defendant's expert witness, defendant's trial counsel stated:

MR. WOOLFENDEN: Most of this isn't in the discovery.

Right?

\* \* \* \* \* \*

This hasn't been disclosed to me before. This is news. This is disturbing.

We conclude, therefore, that defendant was denied effective assistance of counsel by counsel's failure to interview any of the state's witnesses prior to trial and that this error was not harmless.

We need not consider the remaining issues. For the reasons stated, the judgment and sentence are reversed and the matter is remanded for a new trial.

HAIRE and OGG, JJ., concur.