784 P.2d 259

**STATE of Arizona, Respondent,**

v.

**Martin Hale DRAPER, Petitioner.**

**No. CR–88–0307–PR.**

Supreme Court of Arizona, En Banc.

Dec. 6, 1989.

---

434

Richard M. Romley, Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty., Phoenix, for respondent.

John C. Williams, Prescott, for petitioner.

## OPINION

CORCORAN, Justice.

We granted the state's petition for review to consider whether a criminal defendant entering an *Alford* plea of guilty can voluntarily and intelligently forego the right to interview the victim as part of a plea agreement with the state. We hold that, under certain circumstances, a defendant can permissibly enter a plea agreement on the condition that defendant not interview the victim. We decline to adopt a *per se* rule prohibiting such a condition. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### Facts

Petitioner Martin Hale Draper (defendant) pleaded guilty, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to attempted child molestation, and was sentenced to 15 years of imprisonment. Pursuant to rule 32, Arizona Rules of Criminal Procedure, defendant filed a petition for post-conviction relief, alleging that the state's·offer of a plea agreement was based on the impermissible condition that neither he nor his attorney interview the victim. Defendant argued that this condition violated his right to confront the witnesses against him, as guaranteed by the sixth amendment to the United States Constitution and art. 2, § 24 of the Arizona Constitution. Defendant also alleged that William B. DeMars, Jr., the deputy county attorney, insisted on no written record of this term of the plea agreement. An affidavit from defendant's trial attorney, Phillip G. Noland, a deputy public defender who participated in the plea agreement and the secrecy condition, supported these allegations, which were not contested by the state. The trial judge, who had sentenced defendant but had not presided at the change of plea hearing, summarily dismissed the petition without an evidentiary hearing and denied defendant's later motion for rehearing.

Defendant then petitioned the court of appeals for review of the trial court's action. *See* rule 32.9(c). The court accepted review and set aside the plea on several bases.

First, the court of appeals held that "the right to due process of law, the right to effective assistance of counsel, and public policy generally, forbid the prosecution from requiring, as a condition of a plea agreement, ˉthat a defendant forego his right to interview witnesses before deciding whether to accept a plea agreement." *State v. Draper,* 158 Ariz. 315, 316, 762 P.2d 602, 603 (App.1988). Second, the court of appeals held that both counsel improperly withheld knowledge of this condition from the court when the plea was entered. *Draper,* 158 Ariz. at 316, 762 P.2d at 603. The court of appeals remanded with directions to vacate defendant's guilty plea and sentencing and to allow the state to reinstate the original charges against defendant. The state petitioned this court for review of that decision.

### Discussion

The court of appeals adopted a *per se* prohibition against any plea agreement including the condition that a defendant not interview the victim prior to entry of a guilty plea. Although the court acknowledged that it could not cite any authority directly on point, it reasoned:

Our decision is based on our belief that to forbid a defendant the right to attempt to interview witnesses undermines the adversary system and threatens the

foundation of our system of justice. Such a condition violates the right to due process of law as guaranteed by the Fifth Amendment to the Constitution of the United States and article 2 § 24 of the Arizona Constitution, and the right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States and article 2 § 24 of the Arizona Constitution. Even if the condition were not violative of these constitutional rights, it nonetheless is against public policy.

*Draper,* 158 Ariz. at 317, 762 P.2d at 604. We decline to adopt this broad prohibition under all circumstances, and address each of these grounds in an effort to delineate when a promise not to interview a victim permissibly could be made as part of a written plea agreement disclosed to the court.

### A. *Due Process of Law*

■ As the court of appeals noted, due process requires that a defendant be able to assess intelligently "the numerous factors which bear upon his choice of whether to formally admit his guilt or to put the state to its proof." *Draper,* 158 Ariz. at 317, 762 P.2d at 604, quoting *United States ex rel. Healey v. Cannon,* 553 F.2d 1052, 1056 (7th Cir.1977).

An *Alford* guilty plea is constitutionally permissible if the trial court finds substantial evidence of guilt, even if a defendant maintains that he did not commit the crime. *Alford,* 400 U.S. at 36–37, 91 S.Ct. at 167, 27 L.Ed.2d at 171. Alford pleaded guilty to a lesser charge after weighing the state's circumstantial evidence and the potential threat of a death penalty if convicted on the greater charge. The Supreme Court upheld the plea "[i]n view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence." *Alford,* 400 U.S. at 38, 91 S.Ct. at 168, 27 L.Ed.2d at 172.

■ Thus, in determining the validity of any *Alford* plea, we examine two factors. First, the state's factual basis must show substantial evidence that defendant committed the crime; second, the record must reflect that defendant made a voluntary, knowing, and intelligent decision to enter a guilty plea although he maintained his innocence.

Here, the first factor is met. The state properly established a complete factual basis, containing every element of the crime, in its recitation to the trial court of what the state's evidence would show if the case had proceeded to trial. The change of plea transcript indicates the following factual basis:

THE COURT: I assume that since this is an *Alford* plea that you do not agree that you have done what is charged here and that we therefore must have an independent basis, factual basis established.

MR. DeMARS: Yes, Your Honor. I believe that Mr. Draper was severely intoxicated at the time he was arrested ... and that is the reason that we're having an *Alford* plea. The offense occurred on March 2nd, 1986 at approximately 3:15 a.m. ... [at] St. Joseph's Hospital.

At that location, [the victim, a nine-year-old girl] ... was in the hospital for an operation and she was recovering from that operation. She was in her hospital room. At approximately 3:15 she was awakened by the defendant and she felt the defendant fondling her private parts, her vagina, her genitals, with his hand. And this was the information that she gave Officer Mich of the City of Phoenix Police Department. She was also interviewed by Sergeant Kiler of the City of Phoenix Police Department. She is an officer. And ... it was also ascertained in conversations that she had with the victim, ... that the man sat down beside her bed and touched her private parts, and she pointed to her vaginal area as being the private parts that he touched.

This is corroborated by the fact that the victim ... was in the hospital room and her mother was very concerned about her recovery and her being personally attended to, so her mother was also in the bedroom, in a corner of the bedroom, and when she heard her daughter

yell she woke up and she saw the defendant, Martin Draper, sitting on the bed of her daughter. . . . [The victim] identified the defendant as being the person who molested.

THE COURT: Does your police report indicate how it was that Mr. Draper was in the hospital room or why?

MR. DeMARS: Other personnel from the hospital saw him wandering around. He apparently was there to obtain some prescription drug, but he was not supposed to be on that floor. This is a floor for children, the floor that he was found on.

The state thus properly provided substantial evidence of defendant's guilt, and the strength of the factual basis is not at issue here.

The due process issue defendant raises relates to the second factor—the voluntariness and intelligence of his plea. Generally, a defendant will not be able to make an intelligent *Alford* plea without a factual investigation. An *Alford* plea, by its nature as a "grudging concession that the state ha[s] a case to present which might result in appellant's conviction," is one for which someone other than the defendant usually establishes the factual basis. *State v. King*, 116 Ariz. 353, 355, 569 P.2d 295, 297 (App.1977) (factual basis for *Alford* plea was established by prosecutor's recitation of the state's case rather than by defendant); *State v. Hamilton*, 142 Ariz. 91, 93, 688 P.2d 983, 985 (1984) (factual basis for *Alford* plea can be established by "the record as a whole or any part of it, including a preliminary hearing"). Thus, defendant's decision whether to enter an *Alford* plea is directly affected by his knowledge of the strength of the state's case against him.

■ We agree with the court of appeals that, under some circumstances, precluding a defendant from interviewing the victim before entering a plea agreement could prevent a defendant from making an intelligent decision to enter an *Alford* plea. However, we decline to adopt a flat prohibition against such a condition. We cannot say, for example, that a defendant's inability to interview the victim before entering a guilty plea, as opposed to an *Alford* plea, would always interfere with the defendant's intelligent choice to plead guilty. The defendant pleading guilty is normally aware of and personally establishes to the court's satisfaction the factual basis for the guilty plea. *See* rule 17.3; *State v. Cain*, 152 Ariz. 479, 482, 733 P.2d 676, 679 (App. 1987) (trial judge engaged in a "questionable practice" by allowing defense counsel, rather than defendant, to establish the factual basis). Additionally, we cannot say that such a condition in the plea agreement would always affect the validity of any plea—guilty, no contest, or *Alford*. Other witnesses, evidence, and the record available to a defendant at the time of entering the plea agreement, including the testimony of the state's witnesses at the preliminary hearing or before the grand jury, may be adequate for a defendant to intelligently assess the nature and strength of the state's case against him even without interviewing the victim.

■ Moreover, we note that even in the absence of a condition in the plea agreement that a defendant not interview the witness, defendant has no absolute right to interview the victim in every case. If a victim refuses to cooperate with the defense's request for an interview, the defendant may file a motion to depose the victim, pursuant to rule 15.3. Rule 15.3 not only provides the trial court with discretion to refuse to order the examination of the victim, but it also provides certain criteria defendant must show before the court will entertain the motion. Defendant must show either (1) that the victim's testimony is material and the victim will be unavailable at trial, or (2) that the victim's testimony is necessary to prepare an adequate defense, that the victim was not a witness at the preliminary hearing and will not cooperate in granting a personal interview, or (3) that the victim is incarcerated. *See* rule 15.3(a)(2). Thus, defendant might not have been able to compel the victim to attend a defense interview or deposition in this case regardless of the terms of the plea agreement.

Because a trial court might properly find that a defendant's waiver of his right to interview a victim was voluntary and intelligent under some circumstances, we hold that a *per se* rule barring such a condition is inappropriate. Such conditions in a plea agreement should be reviewed by the trial court on a case-by-case basis to assure that a defendant's plea meets the standards set forth in rule 17 and *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In this case, facts appear in the record that might support a determination that defendant could assess the strength of the state's case without interviewing the victim. For example, the transcript of the preliminary hearing (at which defendant was present with counsel) indicates that the victim's mother gave detailed testimony about the victim's statements to two police officers, and that defense counsel had an opportunity to cross-examine the victim's mother. In addition, defense counsel admitted at the change of plea hearing that the police reports provided by the prosecution pursuant to rule 15.1(a)(1) gave very detailed accounts of the victim's statements.

The plea agreement did not preclude the defense from interviewing either the victim's mother or the investigating officers. If defense counsel properly investigated the facts of the case through other witnesses, evidence, and the record available prior to the plea agreement, and then made defendant aware of those facts, defendant could have intelligently assessed the nature and strength of the state's case against him in deciding to enter an *Alford* plea without interviewing the victim.

However, facts not available on the record may indicate defendant was somehow prevented from entering an intelligent plea by his inability to interview the victim. Because the trial court summarily dismissed defendant's petition for post-conviction relief, no evidentiary hearing was held on the issue whether the condition that he not interview the victim violated defendant's due process right to an intelligent plea. The trial court will need to examine this issue, among others, on remand.

■ Furthermore, because a promise to not interview a victim has strong potential to be a coercive condition under some circumstances and may interfere with a defendant's due process rights to prepare a defense, we hold that its inclusion in a plea agreement can be justified only when the record shows a special reason to satisfy the trial court that such a condition is reasonable under the circumstances.

■ We believe that the following test may help the trial court determine whether a defendant's agreement to not interview the victim is permissible. The trial court should consider and weigh the following factors: (1) whether questioning would be unduly traumatizing because of the victim's emotional state, age, or the nature of the offense; *and* (2) whether defendant has sufficient access to the state's evidence, including the victim's probable testimony, by other means; for example, if the state presented evidence of what the victim's testimony would be at a preliminary hearing at which the defendant had the opportunity of cross-examination; *or* (3) whether sufficient evidence of defendant's culpability exists that the victim's statement would be superfluous; for example, if the defendant has already admitted guilt, or if the defendant, although clearly present at the time of the offense, claims no memory of committing the crime, but wishes to enter an *Alford* plea after being advised of the strength of the state's evidence against him, or if the victim has limited knowledge of the elements of the offense, or if the victim's testimony would not be important if the case went to trial. The trial court should always find the first factor to allow the agreement to not interview; additionally, the trial court should also find either the second or third factor. Application of this test will protect the defendant's interest in due process, the state's interest in judicial economy, and the victim's interest in emotional and psychological safety from further trauma.

On remand, the trial court will need to determine if such factors justified the in-

clusion of the promise to not interview the victim in this case.

### B. *Ineffective Assistance of Counsel*

■ As stated by the United States Supreme Court:

Where ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."

*Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985), quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). We agree with the court of appeals that a defense counsel's inability to interview the victim, before advising a client to enter an *Alford* plea, may render counsel's assistance ineffective.

Our court of appeals has stated:

[E]xcept in the most unusual circumstances, it offends basic notions of minimal competence of representation for defense counsel to fail to interview any state witnesses prior to a major felony trial.

*State v. Radjenovich,* 138 Ariz. 270, 274, 674 P.2d 333, 337 (App.1983); *see also* Comment, *Investigation of Facts in Preparation for Plea Bargaining,* 1981 Ariz. St. L.J. 557, 575 ("the single element of factual investigation of a case which defense counsel should not overlook ... is an interview with the victim. Such an interview improves defense counsel's effectiveness in subsequent plea negotiations with the prosecution").

However, the appellate court also has held that defense counsel's failure to interview the victim did *not* constitute ineffective assistance when counsel used a transcript of the victim's testimony from a prior hearing to cross-examine the victim at the subsequent trial. *State v. Flores,* 140 Ariz. 469, 475, 682 P.2d 1136, 1142 (App. 1984). *See also State v. Dippre,* 121 Ariz. 596, 599, 592 P.2d 1252, 1255 (1979) (no prejudice resulted to defendant from his counsel's failure to interview victim prior

to trial); *State v. Workman,* 123 Ariz. 501, 504, 600 P.2d 1133, 1136 (App.1979) (counsel's failure to interview victims did not render his assistance ineffective because counsel "was prepared to cross-examine the victims and ... the cross-examination was effective").

Defense counsel often may obtain information concerning a victim's expected testimony from sources other than the victim, such as police reports, interviews with other witnesses, preliminary hearings, and grand jury transcripts. A trial judge should examine the circumstances surrounding a plea to determine whether defendant's promise to not interview the victim will render defense counsel ineffective in advising defendant about whether to enter the plea agreement.

We hold that a condition in the plea agreement precluding a defendant and his defense counsel from interviewing the victim does not necessarily constitute ineffective assistance of counsel. On remand, the trial court will need to determine whether, under the facts of this case, defense counsel had adequate information available, without interviewing the victim, to effectively counsel defendant.

### C. *Public Policy*

■ The court of appeals also found the plea condition contrary to public policy because it "holds so strong a potential for subverting the truth-finding process...." *Draper,* 158 Ariz. at 319, 762 P.2d at 606. We agree that prohibiting a defendant from interviewing the victim may result in important facts being unavailable to the defendant. However, we do not believe that such a result will universally occur. As we noted above, a defendant can obtain the facts necessary for an intelligent plea in ways other than by a direct interview with the victim.

We note that public policy also favors plea agreements. We have stated that

properly negotiated plea agreements ... are an essential part of the criminal process and can enhance judicial economy, protect the resources of the State, and

serve the ends of justice for the defendant, the State and the victim.

*State v. Superior Court*, 125 Ariz. 575, 577, 611 P.2d 928, 930 (1980); *see also State v. Wright*, 103 Ariz. 52, 55, 436 P.2d 601, 604 (1968) (plea agreements "promote the public interest of encouraging settlement of criminal cases without necessity of trial").

Recent expressions of public policy also favor protecting victims. This court recently promulgated rule 39, Arizona Rules of Criminal Procedure, which recognizes that a victim has certain rights in a criminal proceeding. Because it was effective after the date defendant was charged, the new rule does not apply to defendant's case. *See State v. Stenrud*, 113 Ariz. 327, 553 P.2d 1201 (1976). We merely note its enactment to point out that a victim has a right to refuse to be interviewed by a *pro se* defendant, or by defense counsel if the defendant is present, or when the information sought could be obtained by written interrogatories. Rule 39(b)(9), −(10), −(11)(iii). The victim also has a right to confer with the prosecutor and to be heard at a change of plea hearing. Rule 39(b)(5). These new protections reflect a public policy to reduce the harm and trauma inflicted on a victim by a criminal act. If a defendant otherwise intelligently and voluntarily agrees, with effective assistance of counsel, to not interview the victim as a condition of a plea agreement, we believe the public policies in favor of both plea agreements and the protection of victims must be recognized. We hold that public policy does not require a *per se* rule prohibiting this type of condition.

### D. *Conduct of the Trial Attorneys*

▮ The most troubling aspect of this case is the conduct of the prosecutor and defense counsel in concealing from the trial judge the condition that defendant not interview the victim. This term of the plea agreement was not included in the written agreement and was not orally disclosed in open court at the second change of plea proceeding before the judge who accepted the plea.[1]

The secrecy of the condition was evidenced by defendant's trial counsel's affidavit in the post-conviction relief proceeding. *See Draper*, 158 Ariz. at 320–21, 762 P.2d at 607–08. The state did not contest these facts in the trial court or in the court of appeals. In its petition for review before this court, the state conceded, "If such a condition is imposed, it should not be hidden from the trial court."

▮ A criminal defendant does not have a right to a plea agreement. *State v. Morse*, 127 Ariz. 25, 31, 617 P.2d 1141, 1147 (1980). However, when a plea agreement is offered by the state and accepted by a defendant, a court must ensure that the parties comply with all applicable procedures. The prosecutor and defense counsel have "an affirmative duty to assist the Court to the end that the appropriate procedural requirements are met." *State v. Mendiola*, 23 Ariz. App. 251, 253, 532 P.2d 193, 195, *aff'd*, 112 Ariz. 165, 540 P.2d 131 (1975); *see also State v. Pierce*, 116 Ariz. 435, 438, 569 P.2d 865, 868 (App.1977) ("if counsel knows of any reason or circumstance that might impugn the validity of a plea, he should call the matter to the attention of the court prior to the taking of the plea"). Failure of both counsel to disclose to the trial judge the unwritten condition that the defense not be allowed to interview the victim violated this duty.

---

1. The first change of plea proceeding took place before the Honorable Sallie Gaines, Judge *Pro Tempore*, who continued the matter after defense counsel revealed the secret condition that defendant not interview the victim. At the second change of plea proceeding before the Honorable Bedford Douglas, Jr., Judge *Pro Tempore*, neither counsel advised the court of the existence of that condition of the plea agreement. Furthermore, Judge Douglas did not ask defendant if there were any other promises or conditions *not* contained in the written agreement. *See* rule 17.4(c). As pointed out by the court of appeals, if the trial judge had expressly asked if the parties had agreed to any other terms, both counsel would have been required to reveal the existence of this condition. Based on this limited record, however, we cannot determine whether trial counsel intentionally concealed from the court the condition that defendant not interview the victim.

A trial court must determine that a defendant understands and agrees to the plea agreement's terms, that the written document contains *all* of the agreement's terms, and that the plea agreement is entered into voluntarily and intelligently. Rule 17.4, *see also* Forms 18 and 19, Arizona Rules of Criminal Procedure. A judge cannot adequately fulfill this responsibility without being apprised of *all* terms of a plea agreement. *See* rule 17.4(c).

In this case, the trial judge who accepted the plea agreement was not aware of the condition that defendant not interview the victim. We cannot determine on the present record whether the court would have accepted the plea with that term included. On remand, this issue can be addressed with the others mentioned above at the evidentiary hearing. If the trial court finds that the court would have accepted the plea with the condition clearly disclosed that defendant not interview the victim, and also concludes that defendant's plea was voluntary and intelligent, and that defendant was effectively advised by counsel, then the plea agreement can be upheld, and defendant's petition for post-conviction relief denied. If, however, the trial court determines the plea to be infirm, the plea must be vacated as invalid, and the state may reinstate the original charges against defendant.

On a final note, we agree with and adopt the reasoning and analysis of the court of appeals in condemning the conduct of both trial counsel in keeping secret this condition of the plea agreement. The court of appeals noted that this conduct may have violated Ethical Rule 3.3, Arizona Rules of Professional Conduct, as failure to disclose a necessary material fact to a tribunal. *Draper*, 158 Ariz. at 322, 762 P.2d at 609. We further note that this conduct also may have violated ER 8.4(d), which provides: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

We point out, however, that the record in this case is unclear about counsels' intentions. We do not have evidence sufficient to say that this was a deliberate attempt to keep the condition concealed from the court at the second change of plea hearing. As the court of appeals reasoned,

> In fairness to the prosecutor who handled this case at the trial stage, we observe that he has never been heard on this precise point. A different deputy county attorney handled the petition for post-conviction relief and the petition for review.

*Draper*, 158 Ariz. at 322, 762 P.2d at 609. When the record is further developed on remand the trial court may determine whether either trial counsel's conduct rose to the level that should be referred for disciplinary action. *See* Canon 3(B)(3), Code of Judicial Conduct. On the basis of the record before us, we simply join the court of appeals in strongly condemning counsels' failure to disclose to the trial court all conditions of the plea agreement.

### Conclusion

We do not agree with the court of appeals that a condition in the plea agreement that prevents a defendant from interviewing a victim necessarily violates due process, results in ineffective assistance of defense counsel, or runs counter to public policy. We do concur with the court of appeals' condemnation of trial counsels' conduct in keeping the condition secret from the trial court.

Because the trial judge was unaware of the conditional term, he could not determine whether defendant's acceptance of the agreement truly was voluntary and intelligent or whether his counsel's assistance was ineffective. Partially on this basis, the court of appeals set aside defendant's plea, vacated defendant's conviction and sentencing, and remanded to allow the state to reinstate the original charge against defendant.

We further disagree with the court of appeals that this is the proper remedy at this procedural juncture. This case is on review from the trial court's summary dismissal of a rule 32 petition. Factual issues remain regarding the intelligence of defendant's *Alford* plea, the effectiveness of defense counsel, and whether the trial court would have accepted the plea had it known of the secret condition. These issues cannot be determined on the basis of the

sketchy record before us, and require remand to the trial court for an evidentiary hearing. *See, e.g., State v. Crowder,* 155 Ariz. 477, 747 P.2d 1176 (1987).

We also find another reason why the plea should not be set aside. *All* the parties to this plea agreement—the prosecutor, defense counsel, and defendant—apparently agreed to the condition to not interview the victim. If we allowed this case to be reinstated on the criminal trial docket without first giving the trial court an opportunity to determine whether the plea was valid, the 9–year–old victim in this case would be needlessly victimized again. An evidentiary hearing may avoid such a result.

Accordingly, we reverse the trial court's order dismissing defendant's petition for post-conviction relief, remand this matter with direction to the trial court to hold an evidentiary hearing on the issues raised in defendant's petition based on the principles established in this opinion, and to determine what relief, if any, is appropriate. We vacate the court of appeals opinion insofar as it is inconsistent with our opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.