IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARK ANTHONY LUCAS, *Appellant.*

No. 1 CA-CR 13-0215
FILED 3-20-2014

Appeal from the Superior Court in Mohave County
No.   S8015CR201200025
The Honorable Steven F. Conn, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Mohave County Legal Defender's Office, Kingman
By Diane S. McCoy
*Counsel for Appellant*

## OPINION

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

**H O W E,** Judge:

¶1        Mark Anthony Lucas appeals his convictions and sentences for two counts of sexual conduct with a minor, two counts of transferring dangerous drugs, and two counts of involving a minor in drug offenses. He raises several issues on appeal, all but one of which we resolve in a separate memorandum decision pursuant to Arizona Rule of Criminal Procedure 31.26. In this opinion, we consider his claim that he had the right to interview the victim's grandmother because although she had the right to refuse an interview under A.R.S. § 13–4433(G) as the victim's representative while the victim was a minor, she lost that right once the victim turned eighteen years old. We hold that once a parent or legal guardian exercises the victim's rights on the victim's behalf, the right to refuse an interview remains effective until the end of the criminal proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        As relevant here, the minor victim—who has developmental difficulties and attended special education classes—lived with his grandmother at the time of the criminal acts. Once the victim revealed that the criminal acts had occurred and the State began prosecuting Lucas, the grandmother was designated the victim's representative pursuant to Arizona Rule of Criminal Procedure 39(g) and A.R.S. § 13–4403(C) and exercised the victim's rights on the victim's behalf under the Victims' Bill of Rights.

¶3        Although trial on the charges was originally scheduled for June 2012, Lucas obtained at least seven continuances of the trial date, which delayed trial until January 2013. When the victim turned eighteen years old during the delay, Lucas moved to depose the victim's grandmother, claiming that the grandmother could "no longer stand in [the victim's] shoes for purposes of asserting victims' rights, specifically the right to refuse a pre-trial interview." At the hearing on the motion, the State responded that the victim was a minor at the time of the offenses

and should be considered a vulnerable adult under his grandmother's supervision because of his developmental difficulties. Lucas disputed that the victim was a vulnerable adult.

¶4 The trial court denied the motion to depose the grandmother. The court declined to decide whether the victim was a vulnerable adult but held that "status for victims['] rights purposes is defined at the commission of the offense, and the fact that the victim in this case is no longer a minor[] does not change the grandmother's right to act and assert her rights as a victim."

## DISCUSSION

¶5 Lucas argues the trial court erred by ruling that the victim's grandmother could continue to assert the right to not be deposed even after the victim turned eighteen. Resolution of this issue involves interpretation of the implementing statutes for the Arizona Victims' Bill of Rights. *See* Ariz. Const. art. II, § 2.1; A.R.S. §§ 13-4401 to -4438. We review questions of statutory interpretation de novo. *State v. Cheramie*, 218 Ariz. 447, 448 ¶ 8, 189 P.3d 374, 375 (2008).

¶6 The Victims' Bill of Rights grants crime victims particular rights they may exercise during the criminal prosecution of a defendant. Ariz. Const., art. II, § 2.1(A). If the victim is a minor or vulnerable adult, the victim's parent, immediate family member, or other representative designated by the court "may exercise all of the victim's rights on behalf of the victim." A.R.S. § 13–4403(C). Among the rights granted to a victim is the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const., art. II, § 2.1(A)(5); *accord* A.R.S. § 13-4433(A); Ariz. R. Crim. P. 39(b)(11). The Legislature has granted the same right to refuse an interview to "the parent or legal guardian of a minor child who exercises victims' rights on behalf of the minor child." A.R.S. § 13–4433(G).

¶7 Lucas does not contest that § 13–4433(G) gave the victim's grandmother the right to refuse a pretrial interview or deposition on her own behalf while the victim was a minor, but argues that this right ceased when the victim turned eighteen. This interpretation, however, is not consistent with the statute's language and purpose.

¶8 The primary goal in interpreting a statute is to determine and give effect to the Legislature's intent as reflected in the terms of the statute. *State v. Tschilar*, 200 Ariz. 427, 434 ¶ 25, 27 P.3d 331, 338 (App.

2001). In construing the language "[w]e employ a common sense approach, reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results." *State v. Barragan-Sierra*, 219 Ariz. 276, 282 ¶ 17, 196 P.3d 879, 885 (App. 2008). The Crime Victims' Rights statutes "shall be liberally construed to preserve and protect the rights to which victims are entitled." A.R.S. § 13–4418.

¶9 Section 13–4433(G) grants "the parent or legal guardian of a minor child who exercises victims' rights on behalf of the minor child" an independent right to refuse an interview on the parent or legal guardian's own behalf. *Lincoln v. Holt*, 215 Ariz. 21, 26 ¶ 14, 156 P.3d 438, 443 (App. 2007) (construing identical statutory predecessor, A.R.S. § 13–4433(H)). A common sense reading of this language is that once a parent or legal guardian "exercises" victims' rights on the victim's behalf, the statutory right to refuse an interview attaches to the parent or legal guardian and remains enforceable until the criminal proceedings have concluded. *See* A.R.S. § 13–4402(A) (the rights the Crime Victims' Rights statutes establish "arise on the arrest or formal charging" of the defendant and "continue to be enforceable . . . until the final disposition of the charges"). Because the victim's grandmother exercised the victim's rights on his behalf during the criminal proceedings, she had a right to refuse an interview until the end of all the proceedings in this case, even though the victim had turned eighteen and could exercise his rights himself.

¶10 Reading § 13–4433(G) to the contrary as Lucas posits inserts a temporal limitation of the parent or legal guardian's right not expressed in the statutory language. Nothing in § 13–4433(G)'s text or purpose indicates that a temporal limitation should be read into the language. The Legislature enacted § 13–4433(G) pursuant to its authority to "define, implement, and protect" victims' rights under Arizona Constitution article II, § 2.1(D). *Lincoln*, 215 Ariz. at 26 ¶ 19, 156 P.3d at 443. Because a parent or legal guardian communicates with the minor victim about the facts of the case in exercising the victim's rights on the victim's behalf, granting the parent or legal guardian the right to refuse an interview on his or her own behalf "further ensures that the minor victim is 'provided with basic rights of respect [and] protection' for the enumerated victims' rights." *Id*. at 26–27 ¶ 19, 215 Ariz. at 443–44 (quoting 1991 Ariz. Sess. Laws, ch. 229, § 2 (1st Reg. Sess.)). The Legislature viewed this right as so important to protect the victim's own right to refuse an interview that it rejected a proposed amendment to the statute that would have required a parent or legal guardian who witnessed the crime to submit to an interview. *Id*. at 25 ¶ 12, 156 P.3d at 442.

¶11  Holding that the parent or legal guardian's right to refuse an interview ends the moment that the minor victim turns eighteen would defeat the protection the statute provides. Such a holding would allow the disclosure of formerly confidential information between the victim and the parent or guardian. This would chill the minor victim's free and honest disclosure of information with a trusted adult, thereby disrupting the victim's ability to rely on the parent or guardian and frustrating the very purpose of the Victims' Bill of Rights.

¶12  Lucas's reading also creates an anomaly in the statutes. Section 13–4402(A) provides that victims' rights arise on the arrest or formal charging of the defendant and continue to the end of the criminal proceedings. Under Lucas's interpretation, the parent or legal guardian's right to refuse an interview would arise on the arrest or formal charging of a defendant, but, unlike all other victims' rights, would cease the moment the victim turns eighteen, regardless when that occurs during the criminal proceedings. Interpreting the statute to create such an anomaly contravenes the principle that "[s]tatutes on the same subject matter are to be construed in harmony together." *State v. Jernigan*, 221 Ariz. 17, 20 ¶ 15, 209 P.3d 153, 156 (App. 2009).

¶13  In addition, reading § 13–4433(G) to cut off a parent or legal guardian's right to refuse an interview the instant a victim turns eighteen would create practical difficulties that would impose unnecessary burdens on exercising victims' rights. If the right disappears at the moment that the victim turns eighteen, the parent or legal guardian could be compelled to give an interview or deposition. *See* Ariz. R. Crim. P. 15.3(a)(2) (material witness may be deposed if witness fails to grant interview). Because controversies could arise at the interview or deposition about whether particular questions involve matters that occurred when the parent or legal guardian had the protection of § 13–4433(G), the parent or legal guardian would be entitled to have counsel present to assist in objecting to those questions. Resolving these controversies would likely cause litigation on issues collateral to the defendant's guilt or innocence, and the time taken to litigate these collateral issues would further delay trying the defendant. The Arizona Supreme Court has condemned creating "ad hoc exceptions" to victims' rights, which the court feared would "lead to hearings . . . to determine whether the rights expressly granted to victims by the Victims' Bill of Rights should be overridden. Such proceedings can only increase the harassment of victims that the Victims' Bill of Rights was designed to decrease." *Knapp v. Martone*, 170 Ariz. 237, 239, 823 P.2d 685, 687 (1992).

¶14 Even if a parent or legal guardian would freely waive any protection § 13–4433(G) affords, litigation could still result. The victim has an interest in protecting his or her own right to refuse an interview. If the parent or legal guardian revealed matters that occurred during the time that the victim's right to refuse an interview was exercised, the victim's own right would be compromised. To protect that right, the victim—and presumably the victim's counsel—would have the right to be present at the interview and object to questions that would impinge upon protected information. The resulting litigation would not only hamper the victim's right to refuse an interview, but would also cause unwarranted delay to the criminal proceedings, harming both the victim and the defendant.

¶15 For these reasons, Lucas's interpretation cannot hold. The proper reading of § 13–4433(G) and § 13–4402(A) is that once a parent or legal guardian exercises victims' rights on behalf of the minor victim, the parent or legal guardian has the right to refuse an interview until the final disposition of the defendant's criminal proceedings. Because this right is independent of the minor victim's own right to refuse an interview, the minor's turning eighteen has no effect on the parent or legal guardian's right. Therefore, the trial court correctly denied Lucas's motion to depose the victim's grandmother.

¶16 We recognize that our decision conflicts with *J.D. v. Hon. Hegyi/T.D.*, 1 CA–SA 13–0296, 2014 WL 943145 (Ariz. App. Mar. 11, 2014). In *J.D.*, a different panel of this Court held that a parent or legal guardian's right to refuse an interview under § 13–4433(G) ceases when the victim turns eighteen because the parent or legal guardian no longer "exercises" the victim's rights on the victim's behalf. *Id.*, at *1 ¶ 6. To "avoid the erosion" of the victim's right to refuse an interview that could result from *J.D.*'s interpretation of the statute, *J.D.* precludes the victim's representative from revealing information gained while the victim was a minor. *Id.* at *1 ¶ 11. As we have explained in addressing Lucas's arguments, however, *J.D.*'s interpretation of § 13–4433(G) departs from the statute's text and purpose, creates an anomaly in the victims' rights statutory scheme, and fosters litigation that hinders—rather than promotes—victims' rights. Consequently, we respectfully decline to follow *J.D.*

**CONCLUSION**

**¶17** For the reasons set forth in this opinion and the accompanying memorandum decision, we affirm the convictions and sentences for two counts of sexual conduct with a minor and two counts of transferring dangerous drugs, and vacate the convictions and sentences for involving or using a minor in a drug transaction.



Ruth A. Willingham · Clerk of the Court
FILED: mjt